STEVEN L. DERBY Esq. (SBN 148372)
DERBY, McGUINNESS & GOLDSMITH, LLP
501 West Broadway, Ste 800
San Diego, CA 92101
sderby@dmglawfirm.com
eservice@dmglawfirm.com
Telephone: (510) 987-877
Facsimile: (510) 359-4419

DEBORAH GETTLEMAN, Esq. (SBN 267309)
DERBY, McGUINNESS & GOLDSMITH, LLP
199 Harrison Street, Ste 1800
Oakland, CA 94612
dgettleman@dmglawfirm.com
eservice@dmglawfirm.com
Telephone: (510) 987-8778
Facsimile: (510) 359-4419

Attorneys for Plaintiff
ELIZABETH RAZO

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH RAZO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TAKEDA PHARMACEUTICAL COMPANY LIMITED; BIOLIFE PLASMA SERVICES L.P.<br><br>　　　　Defendants. | CASE NO.<br><br>Civil Rights<br><br>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES<br><br>1. Violation of the Americans with Disabilities Act Title III [42 U.S.C. §§ 12182(a), *et seq.*]<br><br>2. Violation of the Disabled Persons Act [Cal. Civil Code §§ 54 And 54.1]<br><br>3. Violation of the Unruh Civil Rights Act [Cal. Civil Code § 51]<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Plaintiff Elizabeth Razo is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred and most effective means of communication. Defendants have discriminated against Ms. Razo by refusing to provide communication that was effective for her when she was at their facilities to donate plasma. Defendants refused to modify their policies, practices and procedures, insisting that all communication with deaf consumers be in writing, even in the face of specific requests for an ASL interpretation service.

2. Ms. Razo made a good faith attempt to rectify the inaccessible policies by educating Defendants about her rights under the law and requesting ASL interpretation. Instead of providing effective communication, Defendants retaliated against Ms. Razo and told her she was no longer welcome to donate at their facilities.

3. Ms. Razo brings this lawsuit to enforce her rights under the Americans with Disabilities Act and supplementary California laws. She seeks an order requiring Defendants to adopt, maintain and enforce policies, practices and procedures to ensure the denial of access sustained by Plaintiff will not happen in the future to her or others similarly situated. Plaintiff also seeks damages, attorneys' fees, costs and litigation expenses.

## JURISDICTION

4. This Court has jurisdiction over Plaintiff's claims brought under federal law pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367. The State law claims are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

5. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332. All Defendants are out of State citizens and Plaintiff is a citizen of California.

///

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**VENUE**

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to this lawsuit occurred within the Eastern District of California.

**THE PARTIES**

7. At all times herein relevant, Ms. Razo was a person with a disability as defined in 42 U.S.C. § 12102 and California Government Code § 12926(l). She is a profoundly deaf individual who primarily communicates in ASL. Plaintiff is substantially limited in the major life activities of hearing and speaking. Moreover, Plaintiff has a history of, has been diagnosed with and classified as having a disability.

8. Defendant Biolife Plasma Services, L.P. ("Biolife") is, and at all times mentioned herein was, a corporation doing business under the laws of the State of California. According to publicly available documents, Biolife is a limited partnership organized under the laws of the State of Pennsylvania. Biolife describes itself as an "industry leader in the collection of high-quality plasma that is processed into life-saving plasma-based therapies." https://www.biolifeplasma.com/about-biolife/who-we-are (last accessed April 19, 2023). Plaintiff is informed and believes, and on that basis alleges, that Biolife is the operator of the Biolife Plasma Donation Center at Sacramento-Florin Road ("Donation Center") at issue in this case and the provider of the services at issue herein.

9. Biolife owns and/or operates and/or leases the Donation Center, which is a public accommodation open to the public under the laws of the United States and the State of California. It operates as a business establishment under the laws of the State of California because it provides goods, services and facilities in exchange for money.

10. Biolife's website states that it "values all donors and does not discriminate based on…disability." https://www.biolifeplasma.com/legal/non-discrimination-statement (last accessed April 19, 2023).

11. Defendant Takeda Pharmaceutical Company Limited ("Takeda") was at all times mentioned herein, a corporation doing business under the laws of the State of California.

According to publicly available documents, Takeda is incorporated under the laws of the State of Delaware. Plaintiff is informed and believes, and on that basis alleges, that Takeda is the owner of Defendant Biolife. Takeda's website describes Biolife as its "global plasma collection network." https://www.takeda.com/what-we-do/areas-of-focus/plasma-derived-therapies (last accessed April 19, 2023).

12. Plaintiff is informed and believes, and on that basis alleges that Takeda owns and/or operates and/or leases the Donation Center, which is a public accommodation open to the public under the laws of the United States and the State of California. It operates as a business establishment under the laws of the State of California because it provides goods, services and facilities in exchange for money.

**STATEMENT OF FACTS**

13. Ms. Razo is a profoundly deaf individual whose first and primary language is ASL, which is also her preferred method of communication.

14. Ms. Razo requires appropriate auxiliary aids and services, such as an ASL interpreter to effectively communicate with hearing individuals. Because English is not Ms. Razo's first language, anything beyond short plain written statements is not effective communication for her.

15. Ms. Razo has been donating blood since high school to help people in her community. Her experience with Biolife described herein was her first time donating plasma.

**The Advertised Process of Donating Plasma with Biolife**

16. The initial visit for donating plasma with Biolife requires an in-person tutorial on the process of donation, a physical exam and a medical screening where the donor is asked personal and health questions by a Biolife staff member.

17. On subsequent visits, this medical screening takes place on a computer. Though if any answers are deemed unsatisfactory by Biolife, the donor is referred to a live person to complete the screening in-person.

18. After the medical screening, a potential donor meets with a different staff person

1. who takes their vitals. If the person is deemed in good health, they are permitted to donate.

19. Biolife's website states the first visit, "including a physical examination provided by BioLife, medical screening and the plasma donation, usually takes around two hours." Thereafter, visits should only take "approximately one hour." https://www.biolifeplasma.com/become-a-donor/faqs (last accessed April 19, 2023).

**Plaintiff's Experience Donating Plasma with Biolife**

<u>The Initial Intake</u>

20. Ms. Razo's first visit to the Biolife Plasma Donation Center at Sacramento-Florin Road was on December 24, 2022. This location is 80 miles from Ms. Razo's home in Pittsburg, CA and is the closest plasma donation center to her home.

21. When she arrived, Ms. Razo informed the intake staff that she was deaf. The intake staff grabbed a clip board that had papers attached to it entitled "Communication Log." Ms. Razo was informed via writing that all communication between them would have to be written on the communication log. This included lengthy disclosures and detailed questions.

22. Ms. Razo requested an ASL interpreter. She notified Biolife staff that her preferred language was ASL and she could not understand this level of detail in writing. Ms. Razo suggested the use of the ASL Anywhere application on her phone, which can enlist live interpreters on demand in a Zoom-like platform. Biolife denied the request stating that their policy is to use the communication log.

23. Several times the Biolife staff member went to check with a supervisor about Ms. Razo's request for effective communication and each time returned and stated that they had to use the communication log and all communication had to be written.

24. Given how long the process was taking and their refusal to provide an interpreter, Ms. Razo next asked if they could use a speech to text application on her phone so that she could read the questions without the staff member taking the time to write it all out. This request was also denied.

25. Ms. Razo's first appointment took four and a half hours. By the time the intake

session was over, Ms. Razo was light-headed and too tired and hungry to even donate plasma.

The Second and Third Appointment

26. Ms. Razo returned on December 27, 2022. She attempted to use the computer for medical screening but was confused by one of the questions and her answers required her to speak to a live staff member.

27. Again, Ms. Razo was required to use the communication log and had to write back and forth to complete the medical questionnaire.

28. After another lengthy intake process, Ms. Razo was able to donate plasma on her second visit, though was light-headed because of how long the intake process took. The entire visit took nearly three hours.

29. Ms. Razo returned for her third visit on December 31, 2022. The same thing happened with the computer intake and she had to complete the medical questionnaire with a staff member, writing every word back and forth. Frustrated with the writing, Ms. Razo opened the ASL Anywhere application on her phone and brought up a live interpreter who was ready to interpret. Despite having the interpreter available, Biolife demanded Ms. Razo close the application and return to writing on the communication log.

30. Though she was able to donate, Ms. Razo was light-headed because the entire process again took nearly three hours.

The Fourth through Ninth Appointments

31. After the third appointment, Ms. Razo was able to complete her medical questionnaire utilizing the on-site computer and donate successfully. Between January 3, 2023 and January 21, 2023, she donated five times (January 3, 7, 11, 17 and 21).

32. On January 7, 2023, Ms. Razo delivered a written reasonable accommodation request for effective communication, which included a US Department of Justice fact sheet on her rights under the ADA and Defendants' obligation to provide her effective communication. Ms. Razo handed this document to the Donation Center supervisor. She informed the Supervisor

that she prefers to use the ASL Anywhere application for ASL interpretation. The supervisor said she would relay the message to management.

33. During her subsequent appointments on January 11, 17 and 21, no one from Biolife communicated with her about her accommodation request.

Biolife Refuses to Allow Ms. Razo to Continue Donating

34. On January 25, 2023, Ms. Razo returned to the Biolife Plasma Donation Center at Sacramento-Florin Road to donate. When she logged into the computer to complete her medical questionnaire a message popped up telling her to go to the front desk. The front desk staff advised her she would have to meet with the manager.

35. When the manager appeared, Ms. Razo asked if she could use the ASL Anywhere application that provides ASL interpretation as opposed to the communication log. He granted that request. He then informed her that she was permanently barred from donating at the Donation Center-meaning she was not permitted to return to donate- because of the light headedness she experienced during her first three appointments. Her first three appointments were all over three hours long because of Defendants' refusal to provide Ms. Razo the effective communication requested.

36. Despite allowing her to return to donate successfully five subsequent times, she was told Biolife's contracting doctors barred her permanently because of the first three "medical incidents."

37. The manager Ms. Razo spoke with advised her to submit a written complaint to Biolife in response to the permanent "deferral" from Biolife and the Donation Center.

38. On January 28, 2023, Ms. Razo emailed a complaint to Biolife management and Takeda. The complaint outlined the discrimination she experienced at the Donation Center and included a second formal written reasonable accommodation request for effective communication. She did not receive a response.

39. Ms. Razo would like to return to the Donation Center to continue donating plasma but is unable to do so because of Defendants' continuing discrimination and refusal to allow her

to return.

# FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT TITLE III
**[42 U.S.C. § 12182(a), *et seq.*]**

40. Plaintiff incorporates by reference the preceding paragraphs.

41. Plaintiff alleges that Defendants own, lease and/or operate a public accommodation as defined by the Americans with Disabilities Act (ADA). 42 U.S.C. § 12181(7).

42. As owners and operators of a place of public accommodation, Defendants are required to provide Plaintiff, as a disabled person, "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of the Donation Center.

43. Based on the foregoing, Defendants have intentionally refused, despite being aware of their obligations under the law, to effectively serve Plaintiff based solely as her status as a person with a disability.

44. As a result, Plaintiff was denied full and equal enjoyment of and access to Defendants' goods, services, facilities, privileges, advantages or accommodations in violation of the ADA, specifically 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12182(b)(2)(A)(iii).

45. At all times relevant to this action, Plaintiff has had a substantial limitation to the major life activities of hearing, speaking, and reading, and has been an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102(2)(A).

46. One of the specific prohibitions against discrimination under the ADA, as set forth in 42 U.S.C. § 12182(b)(2)(A)(ii), prohibits the following:

> A failure to make reasonable modifications in policies, practices and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities.

47. The foregoing section requires Defendants to demonstrate policies, practices or procedures that would allow Plaintiff to maintain access to the Donation Center when their policy of documenting all communication with a deaf or hard of hearing person in writing does not provide effective communication to the donor.

48. Based on the facts and allegations pled herein, Defendants unreasonably failed and

refused to modify their policies, practices and procedures in that they failed to hire an ASL interpreter or permit Plaintiff to utilize an interpretation application on her phone that would have provided her effective communication.

49. Based on the facts and allegations pled in this Complaint, Plaintiff was damaged and will suffer irreparable harm unless Defendants are ordered to adopt policies and procedures and/or provide auxiliary aids and services that comport with the requirements of the ADA and will allow Plaintiff and those similarly situated to maintain access to the Donation Center. Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community, namely all deaf and hard of hearing people interested in donating plasma. Plaintiff alleges there is a national public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Accordingly, Plaintiff alleges that a mandatory injunction is necessary to ensure that Defendants comply with the applicable requirements of the ADA.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT TITLE V**
**FOR RETALIATION**
**[42 U.S.C. § 12203(a)]**

50. Plaintiff incorporates by reference the preceding paragraphs.

51. The ADA prohibits retaliation against a person who opposes discriminatory acts. 42 USC § 12203(a). Defendants have violated Plaintiff's rights under the ADA by retaliating against her after submitting a written reasonable accommodation request on January 7, 2022 and asserting her rights to effective communication under the law. A little over two weeks later, Defendants barred Ms. Razo from returning to the Donation Center, their nonsensical reasoning being that she was light-headed for her first three visits even though Defendants permitted Ms. Razo to return and donate five subsequent times and only barred her after she made a written request to enforce her rights under the ADA.

52. Plaintiff has no adequate remedy at law to compensate her for the loss of

opportunity for full and equal access to the services, programs and activities provided by Defendants. Accordingly, Plaintiff alleges that a prohibitory or mandatory injunction is necessary to assure that Defendant complies with the applicable requirements of the ADA.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S DISABLED PERSONS ACT
### [Cal. Civil Code §§ 54 et seq.]

53. Plaintiff incorporates by reference the preceding paragraphs.

54. Plaintiff is an individual with a disability as defined in California Government Code § 12926.

55. Plaintiff alleges that Defendants have discriminated against her in the past and have violated her rights under Sections 54 and 54.1 of the California Civil Code.

56. At all times relevant to this Action, California Civil Code Sections 54 and 54.1 have provided that physically disabled persons are not to be discriminated against because of their physical disabilities and that they shall have full and equal use of public facilities and other public places, such as Donation Centers like Biolife.

57. Each violation of the Americans with Disabilities Act also constitutes a violation of Sections 54(c) and 54.1(d) of the California Civil Code, thus independently justifying an award of damages pursuant to California law. Plaintiff alleges that because of her disability she has been denied and continues to be denied full and equal access to Defendants' services in violation of Sections 54 and 54.1 of the California Civil Code. This is based both on Defendants' violation of Ms. Razo's rights under the ADA and also independent violations of her rights under Sections 54(a) and 54.1(a)(1) of the California Civil Code.

58. For Defendants' discriminatory conduct, Plaintiff is entitled to actual damages, statutory damages, treble damages and punitive damages, all according to proof.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### [Cal. Civil Code §§ 51 et seq.]

59. Plaintiff incorporates by reference the preceding paragraphs.

60. Plaintiff is a disabled person and has a disability as defined by § 12926 of the California Government Code.

61. Based on the facts and allegations set forth in this Complaint, Plaintiff alleges that Defendants have discriminated against her and violated her rights under Section 51 of the California Civil Code.

62. At all times relevant to this action, Section 51 of the California Civil Code has provided that physically disabled persons are not to be discriminated against because of their physical disabilities.

63. California Civil Code § 51(b) provides, in pertinent part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

64. Section 51(f) of the California Civil Code states that a violation of the ADA also constitutes a violation of California Civil Code § 51.

65. The failure of Defendants to adopt and modify policies, practices and procedures or provide aids and services to Plaintiff were and are knowing and intentional violations of Plaintiff's rights under the ADA (triggering a violation of § 51(f)) and independently violate her rights under § 51(b). Defendants were on notice of the harm Plaintiff was suffering on account of their failure to accommodate her, and despite their ability to remedy the situation by hiring an ASL interpreter or simply permitting her to use a language interpretation application on her phone, they did nothing.

66. Further, Defendants retaliated against Plaintiff by barring her from returning to the Donation Center after she asserted her rights under the law. Retaliation is an intentional act. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005).

67. Parties who, like Defendants, own and/or operate places of public accommodation that provide exercise or recreational facilities are familiar with the requirements to adopt, create, modify and maintain policies, practices and procedures and/or provide auxiliary aids and services

so that people with disabilities have equal access to the services they provide. Defendants clearly failed to do this.

68. For Defendants' discriminatory conduct, Plaintiff is entitled to actual damages, statutory damages, treble damages and punitive damages, all according to proof.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### FOR RETALIATION
### [Cal. Civil Code § 52(c)]

69. Plaintiff incorporates by reference the preceding paragraphs.

70. Plaintiff alleges that by barring her from returning to the Donation Center to donate plasma after submitting a written reasonable accommodation request and asserting her rights to effective communication, Defendants have retaliated against her in violation of the Unruh Act

71. The Unruh Act prohibits behavior in resistance to the exercise of the rights of a person with a disability, such as Defendants conduct here. Cal. Civil Code §52(c).

72. Plaintiff seeks an injunction requiring Defendants cease their retaliatory and resistive behavior.

73. For Defendants' discriminatory conduct, Plaintiff is entitled to actual damages, statutory damages, treble damages and punitive damages, all according to proof.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff, pursuant to California Civil Code §§ 52, 54.3, 3281, 3333 and 42 U.S.C. section 12188(a)(2) and 12203(c), prays for judgment and the following relief against Defendants:

1. For injunctive relief, though Plaintiff does not request any injunctive relief pursuant to §55 of the California Civil Code;

2. For damages, including but not limited to actual damages, statutory damages, treble damages and punitive damages, all according to proof;

3. For attorney fees, litigation expenses and costs of this proceeding; and

4. For such other and further relief as this Court may deem just and proper.

| | | |
|---|---|---|
| 1 | Date: May 23, 2023 | DERBY, McGUINNESS & GOLDSMITH, LLP |
| 2 | | */s/ Deborah Gettleman* |
| 3 | | By DEBORAH GETTLEMAN, Esq.<br>Attorneys for Plaintiff |
| 4 | | ELIZABETH RAZO |

**DEMAND FOR JURY**

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Date: May 23, 2023                              DERBY, McGUINNESS & GOLDSMITH, LLP

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Deborah Gettleman*
　　　　　　　　　　　　　　　　　　　　　　　　By DEBORAH GETTLEMAN, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　　ELIZABETH RAZO